**United States District Court**

For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

PENSION BENEFIT GUARANTY CORPORATION,

     Plaintiff,

     v.

ADMINISTRATIVE COMMITTEE FOR THE NEW
UNITED MOTOR MANUFACTURING, INC./UAW
HOURLY DEFINED BENEFIT PLAN, SAVINGS
AND RETIREMENT COMMITTEE, and NEW
UNITED MOTOR MANUFACTURING, INC., each
as administrator of the New United Motor
Manufacturing Inc./UAW Hourly Defined Benefit Plan,

     Defendants.

———————————————————————/

No. C 10-00898 WHA

**ORDER DENYING
MOTION TO
INTERVENE**

**INTRODUCTION**

     In this federal enforcement action where the parties have settled, a labor union seeks to

intervene as a party defendant under Rule 24(b).  All existing parties oppose the intervention.

For the reasons stated below, the motion to intervene is **DENIED**.

**STATEMENT**

     Plaintiff Pension Benefit Guaranty Corporation ("PBGC") initiated this suit against

defendant New United Motor Manufacturing, Inc. ("NUMMI") on March 3, 2010.  Plaintiff is

a wholly owned United States government corporation established under 29 U.S.C. 1302(a).

The PBGC administers a pension plan termination insurance program created by Title IV of

1  ERISA.  NUMMI is a joint corporation between Toyota Motor Corporation and General Motors

2  Corporation.

3      On June 1, 2009, GMC filed for Chapter 11 bankruptcy.  That month, GMC terminated

4  its contract to produce GMC vehicles at the NUMMI plant.  In August, Toyota announced that

5  it would terminate its remaining production contracts at the NUMMI plant as of April 1, 2010.

6  In response, the NUMMI plant began winding down its operations.  NUMMI, however, failed to

7  file for a standard termination of the pension plan and failed to communicate to PBGC what

8  arrangements they were making for the pension plan.  In response, PGBC filed suit.  PBGC is

9  authorized by 29 U.S.C. 1342 to commence proceedings to involuntarily terminate a plan they

10  determine will be unable to pay benefits when due or that will increase the loss to PBGC if the

11  plan is not terminated sooner rather than later.  PBGC determined that NUMMI's plan qualified

12  under the statute.  It set a termination date of March 3, 2010, and filed this suit to begin the

13  termination process.

14      On May 3, 2010, plaintiff moved for summary judgment to involuntarily terminate the

15  pension plan and become the statutory trustee of the plan.  After this motion, defendant and

16  plaintiff began working together to come to the best resolution for the termination plan.

17  The parties have signed a settlement which calls for the "standard termination" of the plan by

18  NUMMI.  A standard termination is a process in which the company that is ceasing operations,

19  not the PBGC, allocates funds to cover the payment of pension benefits to employees.

20  The change to a standard termination was made because NUMMI proved to PBGC their ability

21  to fund the termination of the pension plan.

22      On June 21, 2010, the International Union, United Automobile, Aerospace and

23  Agricultural Implement Workers of America ("UAW") filed a motion to intervene under

24  Rule 24(b).  Although the collective bargaining agreement between defendants and UAW had

25  been terminated, UAW sought to intervene as a defendant to protect the interests of its members

26  who are still participants of the plan.  Because the parties have decided to settle on a standard

27  rather than involuntary termination of the plan under ERISA, they jointly filed a stipulation of

28  dismissal on June 28, 2010.  On July 1, 2010, plaintiff withdrew its motion for summary

United States District Court
For the Northern District of California

2

United States District Court
For the Northern District of California

1  judgment, and each party separately filed an opposition to UAW's motion for intervention.

2  UAW seeks to intervene to have a say in how the settlement is structured and to maintain the

3  litigation until it is satisfied.

**ANALYSIS**

5      In the short life of this action, the original and only parties have settled by agreeing upon

6  a "standard termination" under 29 U.S.C. 1341.  The original complaint and motion for summary

7  judgement in this action sought an involuntary termination by plaintiff.  This would have set the

8  termination date on March 3, 2010.  UAW moved to intervene because it felt that the termination

9  date being set on March 3 would harm its members who are plan participants.  The parties

10  moved to dismiss the case and are attempting to complete a standard termination under which

11  the termination date would be set by statute.  UAW has not indicated any problem with the

12  termination date if it will be calculated under a standard termination.  It still seeks to intervene in

13  case defendant is unable to pay, and the date reverts back to the earlier March 3 determination.[*]

14  The parties have now settled and the reversion to a March 3 termination date is no longer a

15  possibility.

16      ERISA establishes two separate types of court proceedings.  The first allows the PBGC

17  to bring enforcement actions and terminations such as the original action in this complaint.

18  The action was brought under 29 U.S.C. 1342 to commence proceedings to terminate

19  defendant's pension plan because PBGC determined that the plan would be unable to pay

20  benefits when due and that the possible long-run loss to PBGC with respect to the plan would

21  increase unreasonably if the plan were not terminated.

22      A second action allows a party like UAW to petition for judicial review of PBGC's

23  agency action.  29 U.S.C. 1303(f)(1) provides:

24          [A]ny person . . . adversely affected by any action of the
            corporation with respect to a plan in which such a person has an
25          interest or who is an employee organization representing such a
            participant or beneficiary so adversely affected for purposes of
26          collective bargaining with respect to such a plan, may bring an

27  _____

28      * As specified by the settlement of the parties, the standard termination would follow statutory
    regulations.  After notice was given to plan participants, 60 days would ensue before the termination could take
    effect.  The March 3 termination date has been removed from the settlement terms.

3

United States District Court

For the Northern District of California

action against the corporation for appropriate equitable relief in the appropriate court.

These are two separate actions.  UAW can presumably invoke the second form of action to seek judicial review of the agency action.  UAW, though, is not trying to do that.  Rather, it is trying to intervene as a party in the first form of action.  The problem is that once UAW has intervened, it has all rights as a party.  It can be heard on every aspect of the proceedings.  This would give UAW the power to appeal and even hold up the efficient resolution of the termination.  In fact, this appears to be the case as the parties have settled and have jointly filed to dismiss this action.  Congress gave the authority to PBGC, not to the union, to bring these types of enforcement actions and to settle them in terms that are fair and just.  These decisions by the PBGC are reviewable at the behest of UAW, if at all, only under 29 U.S.C. 1303(f)(1).  The Court is concerned that allowing intervention in enforcement actions would frustrate the scheme of the statute and allow those on the sidelines to control litigation Congress wanted the PBGC to control.

### 1.    RULE 24:  PERMISSIVE INTERVENTION.

Under Rule 24(b), "A court may grant permissive intervention where the applicant for intervention shows (1) independent grounds for jurisdiction; (2) the motion is timely; (3) the applicant's claim or defense, and the main action have a question of fact in common." *Southern California Edison Co. v. Lynch*, 307 F.3d 794, 803 (9th Cir. 2002) (internal citation omitted).  Furthermore, whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights under Rule 24(b)(3) must be considered.  The district court maintains discretion to deny permissive intervention even when these threshold requirements are met.

The motion by UAW was timely and made before the parties sought to dismiss the involuntary termination.  UAW has specified that their interest in defending the action would arise if defendant NUMMI defaulted on their obligations under the proposed settlement because the termination date would have reverted back to March 3.  The terms of the final settlement have written this possibility out of the termination.  If UAW has other concerns with the settlement, it will have recourse under 29 U.S.C. 1303(f)(1).

1   Congress has specifically provided a mode of judicial review for UAW to follow.

2   Therefore it is unnecessary for UAW to join here as a party.  Once a party is allowed to intervene

3   in the proceedings, to repeat, it has the right to participate in every aspect of the action including

4   settlements and appeal.  UAW would have the power to hold up the prompt settlement of the

5   termination and prompt resolution of the enforcement action.  This would interfere with PBGC's

6   ability to effectively manage and terminate the plan in the most beneficial manner.  This ability

7   was granted to PBGC by Congress and the intervention would likely delay the adjudication of the

8   original parties' rights under Rule 24(b)(3).

9                                                 **CONCLUSION**

10   For the reasons stated above, UAW's motion to intervene is **DENIED**.

11

12   **IT IS SO ORDERED.**

13

14   Dated:  July 9, 2010.

         WILLIAM ALSUP
15       UNITED STATES DISTRICT JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28